IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| JOE A. BARNETT, | : | |
| | : | |
| Plaintiff, | : | |
| | : | No. 3:10-cv-83 (CAR) |
| v. | : | |
| | : | |
| ATHENS REGIONAL MEDICAL | : | |
| CENTER, INC., | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Athens Regional Medical Center, Inc.'s Motion for

Summary Judgment [Doc. 44].  Plaintiff Joe Barnett, a 57-year old African-American

male, brings this employment discrimination action under the Age Discrimination in

Employment Act of 1967, 29 U.S.C. § 621, *et. seq.* ("ADEA"); Title VII of the Civil Rights

Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); and the Civil Rights Act

of 1867 (42 U.S.C. § 1981), as amended by the Civil Rights Act of 1991, contending that

Defendant, his employer, discriminated against him because of his age and race and

retaliated against him for reporting race and age discrimination.  After fully considering

the matter, the Court finds that Defendant is entitled to judgment as a matter of law on

1

all of Plaintiff's claims.   Defendant's Motion for Summary Judgment [Doc. 44] is **GRANTED**.   The Court finds a hearing on this matter to be unnecessary, and thus, Defendant's Motion for a Hearing [Doc. 55] is **DENIED**.

## BACKGROUND

Plaintiff claims that Defendant issued him two written reprimands based on his age and race.  After Plaintiff complained about the race and age discrimination, Plaintiff alleges that Defendant retaliated against him by giving him an unsatisfactory performance review, denying his request for vacation time, and ultimately removing him from employment.  Moreover, Plaintiff, a Vietnam Veteran who suffers from Post-Traumatic Stress Disorder ("PTSD"),[1] contends Defendant's alleged discrimination and retaliation aggravated his PTSD, rendering him unable to work and to be classified as "totally disabled" by Social Security.[2]   Defendant states both reprimands and the unfavorable performance evaluation were based solely on Plaintiff's poor job performance, and he was ultimately removed from employment because he did not return to work after he had exhausted all of his leave under the Family Medical Leave Act ("FMLA") and his non-FMLA leave.  The facts viewed in the light most favorable to Plaintiff are as follows.

---

[1] Office Notes of F. Johnson, Jr., M.D. dated 2/17/10, Pl. Depo., Ex. 43 [Doc. 53-4].
[2] *Id.*; Pl. Depo. at 209 [doc. 53-2].

Defendant originally hired Plaintiff as a carpenter in 1989,[3] and promoted him to Construction Supervisor in 2006.[4] In January of 2009, Plaintiff's supervisor recommended him for a new position of Cabinet Shop Supervisor,[5] and in March, Defendant gave Plaintiff the position.[6] At all times relevant to this lawsuit, Plaintiff's supervisor was Greg Adams, the Construction Manager, a 47-year old Caucasian male.[7] Karen Bunge, a 62-year old Caucasian female,[8] was the Administrative Director and head of the construction department.[9] Like Plaintiff, Robbie Dixon, a Caucasian male in his early 30's, was also a construction supervisor.[10]

Defendant maintains a progressive discipline policy applicable to all of its employees.[11] The policy outlines a five-step discipline procedure that Defendant generally follows:

1. CAUTION: A caution is a statement written to inform or remind employees that [a] specific behavior is not acceptable.
2. WARNING: A warning is a written statement either to reinforce a caution or to document a serious performance problem. A warning requires a specific time for follow-up between a supervisor and employee to determine that acceptable behavior has been achieved.

---

[3] Am. Complaint ¶ 5 [Doc. 16].
[4] Pl. Depo. at 48 [Doc. 53]
[5] Letter from G. Adams to K. Bunge dated Jan. 27, 2009, Pl. Depo., Ex. 12 [Doc. 53-3].
[6] *Id.*; Pl. Depo. at 63 [Doc. 53].
[7] Pl. Depo. at 142 [Doc. 53-1]; Rivers Aff. ¶ 2 [Doc. 44-4].
[8] Rivers Aff. ¶ 2 [Doc. 44-4].
[9] Notice of Disciplinary Action, Pl. Depo., Ex. 16 [Doc. 53-3].
[10] Pl. Decl. ¶ 11 [Doc. 49-2].
[11] Disciplinary Procedures, Pl. Depo., Ex. 8 [Doc. 53-3].

3. <u>FINAL WARNING PRIOR TO TERMINATION</u>: This gives specific notice that the employee's job is in jeopardy.  Specific goals and expectations and a follow-up time for re-evaluation of [his] performance should be given.

4. <u>SUSPENSION</u>: A suspension without pay (salaried employees with pay) may be imposed for any length of time at the discretion of management.  General practice is to suspend no more than three working days.

5. <u>DISCHARGE</u>: An employee may be discharged under two general circumstances:

    a. With prior warnings via the disciplinary process explained above.

    b. Without prior warning for serious violations of policies or procedures for insubordination, dishonesty, or misconduct, which in the organization's sole discretion, requires immediate discharge.[12]

In late 2008/early 2009, Defendant began two large construction projects – the "Fifth Floor Project," whereby Defendant was remodeling the main hospital's fifth floor, and the "Pine Needle Project," whereby Defendant was constructing a new administration office building.  As cabinet shop supervisor, Plaintiff and his crew were responsible for fabricating the cabinets for both projects.  Dixon was responsible for the plumbing, framing carpentry, and electrical work.[13]

On November 3, 2009, Adams issued Plaintiff a written Caution for poor job performance on the "Fifth Floor Project."[14] Plaintiff was disciplined because he stated

---

[12] *Id.*

[13] Pl. Decl. ¶ 11 [Doc. 49-2].

[14] Notice of Disciplinary Action, Pl. Depo., Ex. 16 [Doc. 53-3].

4

the cabinet work was complete when it was not; he ordered maple wood instead of birch wood without approval; and he ordered a different type of cabinet door than had been approved.[15]

Less than one month later on November 28, 2009, Adams issued Plaintiff a second reprimand – a written Warning for poor job performance on the "Pine Needle Project."[16]  Adams disciplined Plaintiff because he did not complete the work on time; he did not order enough trim; he ordered rounded chair rail instead of square edged chair rail; and he miscalculated the number of cabinet doors and therefore had to place six separate orders for the project.[17]

Thereafter, on December 4, 2009, Plaintiff met with Vice President of Operations Bernard Wheatley,[18] a 64-year old African-American, to challenge the reprimands and to complain about discrimination.[19]  Plaintiff accused Adams and Bunge, the head of the construction department, of race and age discrimination, of lying about Plaintiff's conduct, and of violating Defendant's conflict of interest policy.[20]  Thereafter, Wheatley

---

[15] *Id.*; Pl. Depo. at 104-111 [Doc. 53-1].

[16] Notice of Disciplinary Action, Pl. Depo., Ex. 17 [Doc. 53-3].

[17] *Id.*; Pl. Depo. at 101-02; 121 [Doc. 53-1].

[18] Wheatley Aff. ¶ 2 [Doc. 44-3].

[19] Pl. Depo. at 91-92; 104 [Doc. 53-1].

[20] Wheatley Aff. ¶ 3 [Doc. 44-3]; Pl. Depo. at 104-07 [Doc. 53-1].

directed Human Resources employees Carl Trinrud, a 60-year old Caucasian, and Ben Rivers, a 46-year old African-American, to investigate Plaintiff's accusations.[21]

Beginning on December 18, 2009, Trinrud and Rivers met with Plaintiff and opened an investigation into his complaints.[22]  As part of their investigation, Trinrud and Rivers reviewed the hundreds of pages of e-mails and documents presented by Plaintiff, Adams, and Bunge.[23] They also met several times with Plaintiff, Adams, and Bunge to discuss Plaintiff's written reprimands and accusations.[24]  After concluding their investigation, Trinrud and Rivers determined that Plaintiff's accusations were unfounded, that Plaintiff's reprimands were warranted, and that neither race nor age played a factor in the reprimands.[25]  They reported their findings to Wheatley.[26]

Wheatley conducted his own independent investigation into Plaintiff's accusations.[27]  Wheatley reviewed all of the documentation submitted by Plaintiff, Adams, and Bunge and all the documentation compiled by Trinrud and Rivers; Wheatley also personally interviewed Adams and Bunge.[28]  Thereafter, Wheatley likewise concluded that the reprimands were warranted based on Plaintiff's poor job

---

[21] Wheatley Aff. ¶ ¶ 1, 5 [Doc. 44-3].
[22] Pl. Depo. at 93 [Doc. 53-1].
[23] Rivers Aff. ¶ 8 [Doc. 44-4].
[24] Pl. Depo. at 126 [Doc. 53-1]; Rivers Aff. ¶¶ 5-7 [Doc. 44-4].
[25] Rivers Aff. ¶ 9 [Doc. 44-4].
[26] Wheatley Aff. ¶ 10 [Doc. 44-3]; Rivers Aff. ¶ 10 [Doc. 44-4].
[27] Wheatley Aff. ¶ 6 [Doc. 44-3].
[28] *Id.* at ¶¶ 6-12.

performance, that the reprimands were not issued because of Plaintiff's age or race, and that Plaintiff's accusations against Adams and Bunge were unfounded.[29]   Thus, Wheatley upheld Plaintiff's reprimands and instructed Trinrud and Rivers to inform Plaintiff.[30]

On January 6, 2010, Trinrud and Rivers met with Adams and Plaintiff and explained the findings of the investigation and that Plaintiff's reprimands would stand.[31] As a result of the reprimands and the investigation, Plaintiff began suffering from stress and depression.  The day after he received the decision that his reprimands would stand, Plaintiff went to see his doctor who recommended Plaintiff take a leave of absence until January 20th because of "extreme[ ] depress[ion]" and "significant stress."[32]  Defendant approved Plaintiff's request for medical leave[33] and subsequently approved Plaintiff's request for extended medical leave until February 4, 2010.[34]

A month later, around February 4, 2010, Plaintiff returned to work.  Less than a week after returning to work, on February 9th, Plaintiff requested approval to take a

---

[29] *Id.* at ¶ 9; Rivers Aff. ¶ 12 [Doc. 44-4].
[30] Wheatley Aff. ¶ 13 [Doc. 44-3]; Rivers Aff. ¶ 12 [Doc. 44-4].
[31] Pl. Depo. at 132 [Doc. 53-1].
[32] Office Note by F. Johnson, Jr., M.D. dated 1/7/10, Pl. Depo., Ex. 31 [Doc. 53-4]; Return to Work slip dated 1/7/10, Pl. Depo., Ex. 32 [Doc. 53-4]; Pl. Depo. at 139-41 [Doc. 53-1].
[33] Pl. Depo. at 145-47 [Doc. 53-1]; leave of Absence Request form dated 1/12/10, Pl. Depo., Ex. 33 [Doc. 53-4]; Begin Leave of Absence form, Pl. Depo., Ex. 34 [Doc. 53-4].
[34] Pl. Depo. at 161 [Doc. 53-1]; Certificate to Return to Work dated 2/2/10, Pl. Depo., Ex. 38 [Doc. 53-4].

family vacation from March 8th through March 16th.[35]   Defendant denied Plaintiff's request.[36]  No evidence in the record exists as to why Plaintiff's request was denied.[37]

On February 17, 2010, Plaintiff received his 2009 performance evaluation from Adams and received a low score of 137.40.[38]  After receiving this evaluation, Plaintiff requested permission to attend a seminar entitled, "How to Manage Emotions Under Pressure."[39]   On that same day, Plaintiff again visited his doctor because he was "severely overwrought" when Adams denied his vacation request.[40]   His doctor recommended a second medical leave of absence for Plaintiff due to "overwhelming" stress.[41]  Plaintiff submitted his doctor's recommendation to Defendant and was placed on "indefinite leave" beginning February 17, 2010.[42]

On March 5, 2010, Plaintiff's physician opined that Plaintiff's return to work was "undetermined,"[43] and Plaintiff remained out on medical leave.   In May, Plaintiff

---

[35] Pl. Decl. ¶ 8 [Doc. 49-2]; Plaintiff's request for leave, Pl. Decl., Ex. D [Doc. 49-6].

[36] *Id*.

[37] Plaintiff's contention that it was denied "to accommodate Mr. Dixon's personal plans," is a theory not supported by the record. (Pl. Decl. ¶ 8 [Doc. 49-2]). Dixon's vacation request was approved for March 29th through April 2nd, almost two weeks after Plaintiff would have returned from his vacation. (E-mail from G. Adams approving Dixon's vacation request, Pl. Decl., Ex. D [Doc. 49-6]).

[38] Pl. Depo. at 173 [Doc. 53-2]; 2009 Annual Performance Review, Pl. Depo., Ex. 42 [Doc. 53-4].

[39] Pl. Depo. at 172-73 [Doc. 53-2]; E-mail from Plaintiff to Adams dated 2/17/2010, Pl. Depo., Ex. 41 [Doc. 53-4].

[40] Pl. Decl. ¶ 8 [Doc. 49-2].

[41] Pl. Depo. at 179-80 [Doc. 53-2]; Office Note from F. Johnson, Jr., M.D. dated 2/17/2010, Pl. Depo., Ex. 43 [Doc. 53-4].

[42] Pl. Depo. at 183-84 [Doc. 53-2].

[43] *Id*.; Return to Work slip dated 3/5/2010, Pl. Depo., Ex. 46 [Doc. 53-5].

applied for long-term disability benefits.[44]  As of June 2, 2010, Plaintiff had exhausted all protected FMLA and non-FMLA leave.[45]  Thus, on June 2, 2010, Defendant separated Plaintiff from employment, designating his separation as a "medical-resignation" – a designation which leaves Plaintiff eligible for re-hiring.[46]

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[47]  A genuine issue of material fact only exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[48]  Thus, summary judgment must be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.[49]  When ruling on a motion for summary judgment, the court must view the facts in the light most favorable to the party opposing the motion.[50]

The moving party "always bears the initial responsibility of informing the

---

[44] Pl. Depo. at 185-86 [Doc. 53-2]; Long Term Disability application dated 5/10/10, Pl. Depo., Ex. 47 [Doc. 53-5].

[45] Pl. Depo. at 190-92 [doc. 53-2]; Job and Benefit Protection form, Pl. Depo., Ex. 49 [Doc. 53-5].

[46] Trinrud Depo. at 24-26; Separation Notice, Pl. Depo., Ex. 50 [Doc. 53-5].

[47] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986 ).

[48] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[49] *See id.* at 249-52.

[50] *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law.[51]  If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact.[52]  This evidence must consist of more than mere conclusory allegations or legal conclusions.[53]

## DISCUSSION

Plaintiff brings his disparate treatment claims pursuant to the ADEA, Title VII, and 42 U.S.C. § 1981.  Because "these statutes have the same requirements of proof and use the same analytical framework,"[54] the Court will address the Title VII claims with the understanding that the analysis applies to the ADEA and the § 1981 claims as well.  Title VII makes it unlawful for an employer to "fail or refuse to hire or [ ] discharge any individual, or otherwise [ ] discriminate against any individual with respect to his

---

[51] *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted).
[52] *See* Fed. R. Civ. P. 56(e); *see also Celotex Corp.*, 477 U.S. at 324-26.
[53] *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).
[54] *Standard v. A.B.E.L. Serv., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ."[55]

Title VII also makes it unlawful for an employer to retaliate against an employee for his participation in certain statutorily protected activities:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.[56]

Because all of Plaintiff's claims are based on circumstantial evidence, they must be evaluated under the burden shifting framework developed in *McDonnell Douglas Corp. v. Green*.[57]  First, a plaintiff must establish a prima facie case, or "facts adequate to permit an inference of discrimination."[58]  If the plaintiff does so, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for its action.[59] If the employer meets this burden, the plaintiff then has an opportunity to show that the

---

[55] 42 U.S.C. § 2000e-2(a)(1).

[56] 42 U.S.C. § 2000e-3(a).

[57] 411 U.S. 792 (1973).

[58] *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997); *Gregory v. Ga. Dept. of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (retaliation).

[59] *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

employer's proffered reasons for the adverse employment action were merely pretext for discrimination.[60]

**Prima Facie Case**

    a. **Discrimination**

Generally, Plaintiff establishes "a prima facie case of disparate treatment by showing that [he] was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class."[61]   In this case, Plaintiff cannot establish his prima facie case of discrimination because he was not subjected to an adverse employment action.

An adverse employment action is an essential element of discrimination claims pursuant to Title VII, the ADEA, and §1981.[62]   "[T]o prove [an] adverse employment action . . . an employee must show a serious and material change in the terms, condition, or privileges of employment."[63]   "[T]he employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment

---

[60] *Id.* at 253; *McCann v. Tillman*, 526 F.3d 1370, 1375 (11th Cir. 2008) (citation omitted) ("[I]f the [defendant] articulate[s] legitimate reasons for [its] actions, [the plaintiff] must then show that the [defendant's] proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct.").

[61] *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004) (citations omitted).

[62] *Davis v. Town of Lake Park*, 245 F.3d 1232, 1238 (11th Cir. 2001) (Title VII); *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) (ADEA); *Williams v. Waste Mngt. Inc.*, 411 F. App'x 226, 229 (11th Cir. 2011) (§ 1981).

[63] *Howard v. Walgreen Co.*, 605 F.3d 1239, 1245 (11th Cir. 2010) (internal quotation and citation omitted) (emphasis added).

action must be materially adverse as viewed by a reasonable person in the circumstances."[64]  Plaintiff must "establish an 'ultimate employment decision' or make some other showing of substantiality in the employment context in order to establish an adverse employment action."[65]

An "ultimate employment action" is one "such as termination, failure to hire, or demotion."[66]  For a decision "falling short of an ultimate employment decision" to rise to the level to actionable adverse employment, that decision "must, in some substantial way, alter the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect his or her status as an employee."[67]  Among the facts and circumstances affecting whether a decision is considered "adverse" are whether the decision results in "lesser pay, responsibilities or prestige," and whether the decision would "impede an employee's professional growth or advancement in any way." [68]

Plaintiff claims that the November 3, 2009 written Caution, the November 28, 2009 written Warning, and the 2009 performance evaluation were adverse employment actions.  However, the Eleventh Circuit has held that "memoranda of reprimand or

---

[64] *Id.* at 1239 (citation omitted).
[65] *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (citation omitted).
[66] *Id.*
[67] *Id.* (internal quotations and citation omitted).
[68] *Doe v. DeKalb Cnty. Sch. Dist.*, 145 F.3d 1441, 1452 (11th Cir. 1998).

counseling that amount to no more than a mere scolding, without any following disciplinary action, do not rise to the level of adverse employment actions sufficient to satisfy the requirements of Title VII."[69]  The negative evaluation must actually lead to a material change in the terms or conditions of employment, such as "an evaluation that directly disentitles an employee to a raise of any significance."[70]

Here, the written reprimands and negative performance review had no effect on Plaintiff's employment.  Indeed, Plaintiff admits that his two written reprimands did not result in his termination, demotion, suspension, a reduction in pay, or a change in job duties.[71]  Plaintiff also admits that neither a written Caution nor a written Warning prevents an employee from receiving a merit raise.[72]

Further, Plaintiff can only speculate that Defendant might have considered these as grounds for any future adverse employment action.  "Although proof of direct economic consequences is not required in all cases, the asserted impact 'cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment.'"[73]  Plaintiff argues that the written reprimands and the negative performance evaluation "are steps in Defendant's progressive disciplinary policy which

---

[69] *Davis*, 245 F.3d at 1236.
[70] *Gillis v. Georgia Dept. of Corr.*, 400 F.3d 883, 888 (11th Cir. 2005).
[71] Pl. Depo. at 103.
[72] *Id.* at 37.
[73] *Filius v. Potter*, 176 F. App'x 8, 10 (11th Cir. 2006) (citing *Davis,* 245 F.3d at 1239).

14

can lead to harsher disciplinary action."[74]  Plaintiff, however, cannot establish that these actions did lead to any tangible effect on his employment.  Both Title VII and the comparable language in the ADEA "focuses on the effects of the action on the employee rather than the motivation of the employer."[75]

Here, the undisputed facts show that neither the written reprimands nor the performance evaluation affected the terms, conditions, or privileges of employment, and therefore they are not actionable adverse employment actions.[76]  Defendant ultimately separated Plaintiff from employment under a medical resignation,[77]  and no evidence exists that Plaintiff's separation occurred for any other reason than he exhausted all of his FMLA and non-FMLA leave.

Finally, any stress Plaintiff suffered as a result of the reprimands and negative performance review is not an adverse employment action.  Title VII, the ADEA, and §

---

[74] Pl. Response at 4 (emphasis added).

[75] *Smith v. City of Jackson*, 544 U.S. 228, 235-36 (2004) (emphasis in the original) (internal quotations and citations omitted).

[76] *See Clark v. Potter*, 232 F. App'x 895, 897 (11th Cir. 2007) (letter of warning that had no effect on plaintiff's employment not adverse employment action); *Austin v. City of Montgomery*, 196 F. App'x 747, 753 (11th Cir. 2006) (counseling memos not adverse employment action; plaintiff failed to show memos "triggered any tangible form of adverse action such as loss in benefits, ineligibility for promotional opportunities, or more formal discipline"); *Summerlin v. M&H Valve Co.*, 167 F. App'x 93, 97) (11th Cir. 2006) (a reprimand that does not "have an impact on an important condition of employment, such as salary, title, position, or job duties," is not an adverse employment action).

[77] Trinrud Depo. at 24-26.

1981 do "not guarantee a stress-free working environment."[78]   Accordingly, because Plaintiff cannot establish that he suffered an adverse employment action, Plaintiff's Title VII, ADEA, and § 1981 discrimination claims fail as a matter of law.   Defendant's Motion as to these claims is **GRANTED**.

b. **Retaliation**[79]

To establish a prima facie case of discriminatory retaliation, a plaintiff must show: (1) he participated in an activity protected by Title VII; (2) he suffered an adverse employment action; and (3) a causal connection exists between the plaintiff's participation in the protected activity and the adverse employment action.[80]

Plaintiff contends that because he reported age and race discrimination, he suffered the following adverse employment actions: the unwarranted reprimands, the negative evaluation, the denial of his vacation request, and removal from employment. Similar to the Court's discrimination analysis above, the Court finds that Plaintiff

---

[78] *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1233-34 (11th Cir. 2001).

[79] Plaintiff does not address his retaliation claim in his response on the grounds that Defendant failed to move for summary judgment on this claim.   Defendant, however, clearly states in its Motion for Summary Judgment and in its brief supporting its Motion, that it is entitled to summary judgment on all of Plaintiff's claims.   *See, e.g.* Docs. 44 at 1, 2; 44-4 at 20.   Although Defendant failed to separately address each element of Plaintiff's retaliation claim, Defendant clearly argues that Plaintiff fails to establish that he was subjected to an adverse employment action or that his removal from employment was related to anything other than the exhaustion of his FMLA and non-FMLA leave.   Thus, Plaintiff had sufficient notice that Defendant was requesting summary judgment for the retaliation claim and could have responded accordingly.

[80] *Gupta v. Fla. Bd. of Regents,* 212 F.3d 571, 587 (11th Cir. 2000).

cannot establish his prima facie case of retaliation because the reprimands, the negative evaluation, and the denial of his vacation request are not adverse employment actions. Moreover, even assuming his separation from employment is an adverse employment action, the record clearly establishes that Plaintiff's separation is not causally related to his report of discrimination.

An "adverse employment action" in the retaliation context does not carry the restrictive definition that it does in the discrimination setting.  In particular, "the anti-retaliation provision, unlike the substantive provision, is not limited to . . . actions that affect the terms and conditions of employment."[81]   Instead, the test is whether "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[82] The Supreme Court has held that "the significance of any given act of retaliation will often depend upon the particular circumstances.  Context matters."[83]   Moreover, "[t]he anti-retaliation provision [of Title VII] protects an individual not from all retaliation, but from retaliation that produces an injury or harm."[84]   Indeed, "[t]he acts must be material and significant and not trivial."[85]

---

[81] *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 64 (2006).
[82] *Id*. at 68 (internal quotation marks omitted).
[83] *Id*. at 69.
[84] *Id*.

The Court finds that under the particular circumstances of this case, neither the reprimands nor the negative evaluation nor the denial of his vacation request are adverse employment actions. There is no evidence that Plaintiff suffered any material injury or harm from these actions.[86] In particular, there is no evidence that these acts affected his salary or job status or even that they would have affected any future pay raise or his future job status in any way. On the contrary, the evidence establishes that these acts had no effect on his job status whatsoever.[87]

Regarding the negative performance evaluation, an employer's critical review of an employee's work performance would not, by itself, deter a reasonable person from making a charge of discrimination.[88] Moreover, in this case, when Plaintiff received the negative performance review he had already received two reprimands for poor job performance. Thus, Plaintiff had notice of his poor job performance and should have reasonably expected a poor performance evaluation.[89]

---

[85] *See Morales v. Ga. Dept. of Human Res.*, 446 F. App'x 179, 183 (11th Cir. 2011) (citing *Burlington*, 548 U.S. at 68).

[86] *Id.* at 183-84.

[87] The Court notes that the two reprimands were issued <u>before</u> Plaintiff made any complaint of discrimination. Thus, based on this timing, Defendant could not have retaliated against Plaintiff by reprimanding him.

[88] *See e.g., Forbes v. City of N. Miami*, (S.D. Fla. Apr. 4, 2012) ("A critical review of an employee's work product in and of itself would not deter a reasonable employee from making or supporting a charge of discrimination. On the contrary, a reasonable employee who received numerous warnings about his work product may be more inclined to expect such a review.").

[89] *See id.*

The Court also finds it unlikely that any denial of a vacation request would deter a reasonable employee from making or supporting a charge of discrimination; vacation time is usually discretionary with the employer.[90] Moreover, under the particular circumstances of this case, no evidence exists no evidence exists as to why Plaintiff's request was denied.  In fact, the record shows that Plaintiff had been out on medical leave for almost a month, from January 7 until February 5.  Four days after returning to work, Plaintiff requests time off.  It is not unreasonable for Plaintiff to expect a denial due to the fact he had been out of work.

Finally, even assuming Plaintiff's separation was an adverse employment action,[91] the record utterly fails to establish that it was the result of anything other than the exhaustion of his FMLA and non-FMLA leave; thus, the Court finds that Plaintiff's report of discrimination and his separation from employment are "completely

---

[90] *See, e.g., Wynn v. Paragon Syst., Inc.*, 301 F. Supp. 2d 1342, 1354 (S.D. Ga. 2004) (concluding that a denial of plaintiff's vacation request did not qualify as a serious and material adverse change in the terms of conditions of employment in a retaliation claim).

[91] Indeed, the Court questions whether Plaintiff's separation is an adverse employment action at all. Plaintiff took leave from employment for medical reasons, and only after he exhausted all of his FMLA and non-FMLA leave did Defendant have no other choice but to separate him from employment.  No evidence existed that Plaintiff would return to work.  On the contrary, because his doctor ordered indefinite leave for an undetermined period of time, and because Plaintiff had applied for long-term disability, the evidence clearly shows that Plaintiff would <u>not</u> be returning to work; any inference to the contrary is unreasonable.  Consequently, Defendant designated Plaintiff's separation as a "medical resignation" so that it would be able to re-hire Plaintiff if he were able to return.  Based on the undisputed record, the Court seriously doubts that under these circumstances a reasonable person would be deterred from filing a charge of discrimination.

19

unrelated."[92] Plaintiff reported the alleged discrimination on December 4, 2009, and was removed from employment six months later on June 2, 2010.  Plaintiff's protected activity and assumed adverse action are simply too remote for this Court to infer a sufficient causal relationship.[93] The record reflects no evidence that Plaintiff's removal from employment was retaliatory. Indeed, the undisputed record shows that Defendant designated Plaintiff's separation as a "medical resignation" so that he would be eligible for re-hire. Thus, this Court finds Plaintiff fails to establish his prima facie case of retaliation, and Defendant's Motion is **GRANTED** as to Plaintiff's retaliation claim.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment [Doc. 44] is hereby **GRANTED**, and Defendant's Motion for a Hearing [Doc. 55] is **DENIED**.

**SO ORDERED,** this 25th day of March, 2013.

> S/ C. Ashley Royal
> C. ASHLEY ROYAL
> UNITED STATES DISTRICT JUDGE

SSH/lmh

---

[92] *Holifield*, 115 F.3d at 1566 (internal quotation and citation omitted).

[93] *See Higdon v. Jackson*, 393 F.3d 1211, 1220-21 (11th Cir. 2004) (noting that a one-month gap would suggest a causal relationship, but refusing to recognize a three-month proximity between the protected activity and the adverse employment action as sufficient proof of causation).